ERIC A. GROVER (SBN 136080)
eric.grover@kellergrover.com
SARAH R. HOLLOWAY (SBN 254134)
sarah.holloway@kellergrover.com
**KELLER GROVER LLP**
1965 Market Street
San Francisco, California 94103
Telephone: (415) 543-1305
Facsimile: (415) 543-7861

Attorneys for Plaintiff and the Proposed Classes
DEBRA BACHMAN

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DEBRA BACHMAN, individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>CHOSEN FOODS, LLC,<br><br>Defendant. | Case No: '26CV4862 AJB MMP<br><br>CLASS ACTION<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

## CLASS ACTION COMPLAINT

1. Plaintiff Debra Bachman ("Plaintiff"), on behalf of herself and classes of similarly situated individuals defined below, brings this class action against Chosen Foods, LLC ("Chosen Foods" or "Defendant"), based on Defendant's false and deceptive advertising and labeling of its "Avocado Oil" mayonnaise and salad dressing products. Plaintiff makes the following allegations based on the investigation of counsel and on information and belief, except as to allegations pertaining to Plaintiff individually, which are based on her personal knowledge.

## INTRODUCTION

2. This class action lawsuit arises out of Chosen Food's use of false and deceptive marketing, advertising and product labeling to mislead consumers regarding its exclusive use of avocado oil in the manufacturing and preparation of its mayonnaise and salad dressing products.

3. Over the past several years, avocado oil has gained popularity in the culinary and consumer worlds. It "has generated growing interest among consumers due to its nutritional and technological characteristics."[1] Avocado oil "is delicious, nutritious, and easy to use. It's rich in oleic acid, polyunsaturated fats, carotenoids, and other antioxidant-rich nutrients that are linked to improved heart, skin, and eye health."[2] It is reported to have a variety of health benefits, such as reducing arthritis and improving skin.

4. Because of its many reported benefits, consumers seek out products containing or "made with" avocado oil instead of other vegetable or seed oils and are

---

[1] Flores, M., Saravia, C., Vergara, C., Avila, F., Valdés, H., Ortiz-Viedma, *Avocado Oil: Characteristics, Properties, and Applications,* NIH National Library of Medicine (Jun. 10, 2019) (available at: https://pmc.ncbi.nlm.nih.gov/articles/PMC6600360/) (last visited Aug. 12, 2026).

[2] Palsdottir, H., *Evidence-Based Health Benefits of Avocado Oil*, Healthline (Nov. 26, 2024) (available at: https://www.healthline.com/nutrition/9-avocado-oil-benefits) (last visited Aug. 12, 2026).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

willing to pay more for them. As a result of this demand, avocado oil is "increasingly incorporated into processed foods such as snack products, mayonnaise, and salad dressings."[3] Use of avocado oil in processed foods is "often motivated by consumer interest in perceived nutritional benefits and marketing strategies that differentiate products from those formulated primarily with seed oils."[4]

5. Chosen Foods makes, markets, distributes, and sells food products, including mayonnaise, vegan mayonnaise, and salad dressings (the "Class Products") to consumers. The packaging on the Class Products prominently and unequivocally represents that they are made exclusively with avocado oil (the "*Avocado Oil Representations*"). The ingredients listed on the back labels of these products also list avocado oil as the only fatty "oil" ingredient.

6. Reasonable consumers believe, based on the *Avocado Oil Representations*, that the Class Products are made ***only*** with pure authentic avocado oil and do not contain any other fatty oils, such as vegetable or seed oils. Unbeknownst to consumers, however, the Class Products are instead made or adulterated with lesser-value non-avocado oils. Scientific testing by the University of California, Davis ("UC Davis") has confirmed that Chosen Foods mayonnaise and salad dressing products are not "made with" pure authentic avocado oil as represented.

7. From 2024 to 2026, Plaintiff purchased multiple Class Products from retailers in California. The Class Products purchased by Plaintiff prominently represented that they were made with avocado oil and listed avocado oil as the ***only***

---

[3] Lopez-Alvarez, N., Li, X., Vizgordiski, B., Wang, S., *Authenticity of Avocado and Olive Oils Used as Ingredients in Commercially Processed Foods,* Applied Food Research, Vol. 6, Issue 2, at 1 (Dec. 2026) ("UC Davis Study") (available at: https://www.sciencedirect.com/science/article/pii/S2772502226007274) (last visited Aug. 16, 2026).

[4] *Id.*

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

fatty oil ingredient. Plaintiff read and relied on these statements when purchasing the Class Products. She would not have purchased the Class Products at the price she paid, or at all, had she known they were not made exclusively with pure avocado oil.

8. Chosen Foods' false and misleading representations caused and continue to cause consumers economic harm because Plaintiff and proposed Class members purchased and paid a price premium for the Class Products based on Chosen Foods' misleading *Avocado Oil Representations*.

9. Plaintiff seeks relief in this action individually and on behalf of all other similarly situated individuals who purchased the falsely and deceptively labeled Class Products during the statute of limitations period, for violations of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*, California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*, and California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*

## PARTIES

**Plaintiff**

10. Plaintiff Debra Bachman is an individual and resident of California.

11. Plaintiff purchased multiple Class Products from 2024 to 2026 at a Costco retail location in California for personal consumption. Plaintiff saw and relied on Chosen Food's *Avocado Oil Representations* in making her purchases. Plaintiff reasonably believed, based on the *Avocado Oil Representations*, that she was purchasing products made ***only*** with pure authentic avocado oil and no other types of oil, and this belief was fundamental to her decision to purchase the Class Products. Had Plaintiff known that the Class Products were made with oils other than avocado oil, she would not have purchased them, or she would have paid less for them. Plaintiff has suffered injury in fact and lost money as a result of Chosen Foods' misleading, false, unfair, and deceptive practices, as alleged herein.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

**Defendant**

12. Defendant Chosen Foods, LLC ("Chosen Foods") is a limited liability company formed under Delaware law. Chosen Foods manufactures, labels, markets, distributes, and sells the Class Products at issue in this case online and at retail locations throughout California and the U.S. Chosen Foods is headquartered in California, with its principal place of business and mailing address listed with the California Secretary of State at 350 Camino de la Reina, Suite 400, San Diego, California 92108.

13. A substantial portion of the conduct giving rise to Plaintiff's claims, including the labeling, marketing, and sale of Class Products, took place in, and emanated from, California. In addition to its headquarters located in California, in March 2020, Chosen Foods announced its rebranding efforts to "highlight[] [its] roots in Coastal California and Central Mexico . . . in celebration of pure avocado."[5] Chosen Foods also specifically directs people on social media to its Southern California stores to purchase its "pure avocado" products.[6]

**JURISDICTION AND VENUE**

14. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because it is a class action in which, on information and belief, the damages exceed $5 million, exclusive of interests and costs; the number of class members exceeds 100; and at least one member of the class(es) is a citizen of a state different from Defendant.

15. This Court has personal jurisdiction over Defendant because Defendant is headquartered in this District and continuously and systematically conducts business in this District.

---

[5] *See* https://www.multivu.com/players/English/8697051-chosen-foods-coastal-california-mexico-roots-new-brand-identity/ (last visited Aug. 24, 2026).

[6] *See* https://www.tiktok.com/@chosenfoods/video/7146278189566872874 (last visited Aug. 24, 2026).

16. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because, among other things, Defendant is headquartered in this District and a substantial part of the events giving rise to the claims occurred in this District.

## FACTUAL ALLEGATIONS

### A. The Class Products

17. The Class Products consist of various types and flavors of Chosen Food's mayonnaise and salad dressing products. The Class Products are sold in various sizes, including 32 oz., 24 oz., 12 oz or 11.25 oz. (mayo), 24 oz. or 12 oz. (vegan mayo), and 8 oz. (salad dressing) packages. Chosen Foods prominently displays its *Avocado Oil Representation* on each of the Class Products, stating unequivocally that the products are "MADE WITH 100% Pure AVOCADO OIL" and contain "GOOD FATS FROM AVOCADOS," with a cartoon picture of an avocado half, on the front label in the same or similar manner on all Class Products.

18. Additional statements on the side panel of the Class Product labels reinforce the *Avocado Oil Representations.* For instance, the side panel of the mayonnaise Class Products state: "OUR CLEAN & SIMPLE TAKE ON THIS CLASSIC SPREAD IS MADE WITH 100% PURE AVOCADO OIL AND IS 1000% DELICIOUS. MAYO DREAMS COME TRUE!" Below that, it says, unequivocally: "SOY & CANOLA OIL FREE."

19. The side panel of the salad dressing Class Products similarly claims that the products are "Made with 100% Pure Avocado Oil and simple ingredients . . ."

20. The *Avocado Oil Representation* on each of the Class Products conveys the unequivocal message that the Class Products are made ***solely*** with pure authentic avocado oil and no other fatty oils.

21. The *Avocado Oil Representations* are further reinforced by the ingredients listed on the Class Products' back labels, which list avocado oil as the ***only*** fatty "oil" ingredient.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

22. The *Avocado Oil Representations* on the front, side and back labels are the same or similar on all Class Products, as reflected in the following representative images:

Chosen Foods Classic Mayo (various flavors):[7]







[7] Flavors of the non-vegan mayonnaise Class Products include, without limitation, classic and chipotle.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861




<u>Chosen Foods Vegan Mayo:</u>





INGREDIENTS: AVOCADO OIL, FILTERED WATER,DISTILLED WHITE VINEGAR, SUGAR, CHICKPEA PROTEIN BLEND (CHICKPEA PROTEIN, TAMARIND SEED GUM), SALT, MUSTARD* (DISTILLED VINEGAR*, WATER, MUSTARD SEED*, SALT, SPICES*), XANTHAN GUM, ROSMARY EXTRACT* (FOR FRESHNESS), MUSTARD OIL.

* = ORGANIC

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861




<u>Chosen Foods Salad Dressing (various flavors):</u>[8]





**INGREDIENTS:** AVOCADO OIL, LEMON JUICE FROM CONCENTRATE (WATER, LEMON JUICE CONCENTRATE), WATER, SEA SALT, GARLIC POWDER, TAPIOCA STARCH, CITRUS FIBER, DEHYDRATED GARLIC, BLACK PEPPER, TAMARIND SEED GUM, TUMERIC POWDER

---

[8] Flavors of the salad dressing Class Products include, without limitation, lemon garlic; classic ranch; steakhouse Caesar; homestyle balsamic; Greek artichoke; zesty Italian; and strawberry pistachio.




23. Defendant's website has similar statements that communicate to consumers that its mayonnaise products are made ***only*** with avocado oil. For instance, the webpages for Defendant's various mayonnaise and vegan mayonnaise Class Products have an image that claims other mayonnaises are "not 100% pure" and are "mixed with sketchy ingredients," as compared to Defendant's mayonnaises, which are "made with 100% pure avocado oil":

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861




24. The webpages for Defendant's various salad dressing Class Products have a similar image that claims other salad dressings are "not 100% pure" and are "mixed with sketchy ingredients," as compared to Defendant's salad dressings, which are "made with 100% pure avocado oil":



KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

25. Upon information and belief, a substantial portion of Defendant's labeling, marketing and sale of the Class Products took place in, or emanated from, its California headquarters.

26. Defendant does not disclose anywhere that the Class Products are adulterated or "made with" any other fatty oils, and ***not*** solely "made with" avocado oil as represented. Reasonable consumers, like Plaintiff, thus reasonably believe that the Class Products are made ***exclusively*** with pure authentic avocado oil based on Defendant's *Avocado Oil Representations.*

27. The Class Products, however, are not made solely with avocado oil. To the contrary, independent testing performed by scientific researchers at UC Davis found that the fatty acid and sterol profiles of sampled Chosen Food products show that they are ***definitively not*** made with only avocado oil and are adulterated or "made with" other fatty oils instead. Defendant's unequivocal *Avocado Oil Representations* on the Class Products' labels are, thus, false and deceptive.

**B. The Class Products Are Not Exclusively "Made With" Avocado Oil**

***i. International Standards for Identifying Avocado Oil Authenticity***

28. Concerns regarding the authenticity of high-value edible oils are well documented, particularly for avocado oil. "Numerous studies have demonstrated that products marketed as avocado oil may be partially or wholly substituted with lower-cost vegetable oils or refined oils, resulting in mislabeling and economic adulteration."[9] In response, a range of analytical approaches based on fatty acid composition, sterol profiles, and other minor components have been developed and applied to assess oil authenticity and support regulatory oversight.[10]

29. Fatty acids are the chemical building blocks of fats, and sterols are certain organic compounds found in fats. Each type of edible oil contains certain

---

[9] *Id.*

[10] *Id.*

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

proportions of the various fatty acids and sterols. These proportions are expressed in the form of ranges, effectively creating a "fingerprint" using the reference ranges unique to each type of oil. Authenticity of a particular oil is measured by evaluating the unique ratios of specific components, such as oleic acid, campesterol, stigmasterol, and cis-vaccenic acid, which differ significantly between avocado oils and vegetable, seed, and other oils.

30. This unique "fingerprint" is codified by the Food and Agriculture Organization of the United Nations ("FAO") in the Codex Alimentarius[11] ("Codex"), which is a collection of internationally recognized standards, guidelines, and codes of practice adopted by the Codex Alimentarius Commission ("CAC"). These Codex-codified "fingerprints" (i.e., fatty acid and sterol profiles) are used as the standards for identifying various oils.

31. Food standards are proposed, evaluated, and adopted at CAC meetings. The CAC is made up of 189 members representing 188 countries and the European Union.[12] The Codex Electronic Working Group ("EWG") tasked with understanding and identifying the chemical properties of avocado oil, to be used as a means for identifying authentic samples of avocado oil, was chaired by Mexico and co-chaired

---

[11] Latin for "Food Code," the Codex "is a collection of internally adopted food standards and related texts presented in a uniform manner. These food standards and related texts aim at protecting consumers' health and ensuring fair practices in the food trade. The publication of the Codex Alimentarius is intended to guide and promote the elaboration and establishment of definitions and requirements for foods to assist in their harmonization and in doing so to facilitate international trade." *See* https://www.fao.org/fao-who-codexalimentarius/about-codex/en/#c453333 (last visited Aug. 13, 2026).

[12] *See* https://www.fao.org/fao-who-codexalimentarius/about-codex/members/en/ (last visited Aug.16, 2026).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

by the U.S.[13] The EWG's purpose was to "define a 100% authentic and[/]or pure avocado oil, while promoting an inclusive proposal that considers the characteristics of avocado oil produced in the various regions of the world."[14] The EWG noted in its study "the problem of adulteration" in products acquired in supermarkets, which, for purposes of their study, was "intended to be avoided as much as possible."[15]

32. The CAC and EWG undertook the task of establishing and adopting a means for identifying pure authentic avocado oil because "recent growth in demand for healthier food products globally has seen a high value market develop for avocado oil. International agreement on the criteria included in the standard will help protect consumer health, facilitate trade, and provide a basis for determining the authenticity of the product."[16]

33. The CAC evaluated the Codex "fingerprint" for avocado oil based on the EWG's findings and recommendations during its 47th Session in Geneva, Switzerland in November 2024 and voted unanimously to adopt it as a standard means for identifying samples of pure authentic avocado oil.

***ii. UC Davis Study on Avocado Oil Authenticity in Processed Foods***

34. Applying these Codex standards for identifying the "fingerprints" of authentic avocado oil, in 2026, a group of scientific researchers at UC Davis

---

[13] *See* Codex Committee on Fats and Oils, *Draft Amendment/Revision to the Standard for Named Vegetable Oils (CSX 210-1999) Inclusion of Avocado Oil*, CX/FO 24/28/4 (Nov. 2023) (available at: https://www.fao.org/fao-who-codexalimentarius/sh-proxy/ar/?lnk=1&url=https%253A%252F%252Fworkspace.fao.org%252Fsites%252Fcodex%252FMeetings%252FCX-709-28%252FWorking%2BDocuments%252Ffo28_04e.pdf) (last visited Aug. 13, 2026).

[14] *Id.* at 2.

[15] *Id.*

[16] FAO, *FAO-WHO Codex Alimentarius Commission Adopts New Standards* (Nov. 11, 2024) (available at: https://www.fao.org/newsroom/detail/fao-who-codex-alimentarius-commission-adopts-new-standards-47session/en) (last visited Aug. 13, 2026).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

conducted a study of the authenticity of avocado and olive oil in certain processed foods, such as snack products, mayonnaise, and salad dressings, purchased in California retail stores and online, where the food labels declared a ***single oil*** (e.g., avocado oil or olive oil) in the label and ingredient list ("UC Davis Study"). Samples of Chosen Foods mayonnaises and salad dressings were included in the Study.

35. The UC Davis Study found that:

> Among the avocado oil-labeled products, 93% of chip samples were classified as inconsistent with authentic avocado oil based on combined fatty acid and sterol criteria. Similarly, 71% of mayonnaise samples and 100% of salad dressing samples were classified as inconsistent. These findings indicate that labeled claims of premium oils in processed foods do not consistently align with the chemical composition of the oil fraction.[17]

36. Of the 14 mayonnaise samples analyzed, only four were observed to be consistent with pure authentic avocado oil. Of the 12 salad dressings analyzed, none were observed to be consistent with pure authentic avocado oil. Chosen Foods' mayonnaise and salad dressing products fell within the majority of samples found to be ***inconsistent with pure authentic avocado oil***.

37. The UC Davis Study further found, based on the Codex standards, that the patterns identified for these adulterated mayonnaises and salad dressings, including Chosen Foods', were "inconsistent with their labeled oil claims" and, instead, were "***consistent with substitution or dilution using vegetable oils***."[18]

38. The UC Davis Study was published in *Applied Food Research*, a peer-reviewed, open access academic journal published by Elsevier and devoted to scientific and technological applications of food science and engineering.

---

[17] UC Davis Study at 3.

[18] *Id.* at 4 (emphasis added).

39. Based on the independent testing performed by UC Davis scientists in the UC Davis Study, the Class Products do not conform to the Codex standards for products made with pure authentic avocado oil. Contrary to the *Avocado Oil Representation*, the Class Products are not "made with" authentic avocado oil but are adulterated or "made with" other lesser-value vegetable oils.

**C. The *Avocado Oil Representations* Are Material**

40. The *Avocado Oil Representations* are material – i.e., the representations are important to consumers in their decisions to purchase the Class Products. As the UC Davis Study observed:

> [C]onsumers may reasonably interpret front-of-package oil claims as signals of meaningful product differentiation. Prior research demonstrates that ingredient based claims and 'free-from' labels can generate halo effects, shaping perceptions of healthiness and sustainability beyond what is objectively warranted. . . As front-of-package marketing increasingly emphasizes premium oils, understanding whether labeled oils meaningfully represent the lipid fraction is essential for consumer transparency.[19]

41. Avocado oil is well-known to be one of the healthiest edible fatty oils. Studies have indicated that compounds in avocado oil are linked to improved heart, skin and eye health, among other benefits.[20] Consumers purchase avocado oil products (and pay more for) them because they believe products made with avocado oil have benefits as compared to products made with other oils. "Thus, consumers would reasonably expect the named oil, particularly when emphasized through front-of-package claims such as 'made with 100% avocado oil' to be the primary lipid

---

[19] UC Davis Study at 2.

[20] *See* https://www.healthline.com/nutrition/9-avocado-oil-benefits (last visited Aug. 14, 2026).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

source of the product."[21]

42. Based on Defendant's *Avocado Oil Representations,* reasonable consumers believe that the Class Products are made ***only*** with pure authentic avocado oil. Reasonable consumers expect the words "MADE WITH 100% Pure AVOCADO OIL" to mean that the products are made ***exclusively*** with pure authentic avocado oil, and not an oil that is adulterated, mixed with other oils, or another type of oil altogether. This is especially true where, as here, avocado oil is listed as the sole fatty oil ingredient on the back-label ingredient list. Consumers of the Class Products reasonably expect to know what type of oil they are consuming.

43. Defendant knows, or reasonably should know, that its Class Product labeling is misleading consumers. Since at least 2020, the avocado oil industry has been aware of pervasive problems with adulteration and purity of avocado oils.[22] As a producer, distributor, and seller of both avocado oil and products that claim to *exclusively* use avocado oil, Defendant is, or reasonably should be, aware of industry studies and trends and the problems with impurity and adulteration in the avocado oil market.

44. Defendant's false and misleading labeling also allows it to charge a higher price for its Class Products. As the UC Davis Study found, "'[r]etail prices showed consistent premiums for products labeled as containing avocado oil . . . relative to vegetable oil counterparts."[23] Consumers purchased, and continue to purchase, the Class Products in part because the *Avocado Oil Representations* convey the unequivocal message that the products are made only with avocado oil. Plaintiff and Class members would have paid less for the Class Products, or would not have

---

[21] UC Davis Study at 4.
[22] *See, e.g.,* https://www.sciencedirect.com/science/article/pii/S0956713520302449?via%3Dihub (last visited Aug. 14, 2026).
[23] UC Davis Study at 4.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

purchased them at all, if not for the false *Avocado Oil Representations*. Plaintiff and Class members have, thus, suffered a financial injury by paying a price premium that the Class Products command in the market as a result of Defendant's false representations that they are made only with avocado oil.

**D. Plaintiff Was Misled and Harmed by Defendant's False Labeling**

45. On at least five different dates between 2024 and 2026, Plaintiff purchased multiple Class Products from a Costco retail location located in California.

46. Each Class Product that Plaintiff purchased prominently displayed the *Avocado Oil Representation* stating that the product was "MADE WITH 100% Pure AVOCADO OIL" on the front label of the package, along with a cartoon picture of a half avocado and language on the side and back labels confirming the product was made only with avocado oil, as depicted in ¶ 22. The ingredient list for each Class Product Plaintiff purchased listed avocado oil as the only fatty oil in the product's ingredients. Plaintiff read and relied on these statements when purchasing the Class Products and made her purchases because she wanted products made ***solely*** with pure authentic avocado oil. Plaintiff would not have purchased the Class Products, or would have paid less for them, had she known that they were adulterated, combined, or made with other oils and not made with only pure authentic avocado oil.

47. Plaintiff wants Defendant to fix its practices and sell products with accurate labeling. If Defendant fixes its products so that they are, in fact, made with (and only with) pure avocado oil, Plaintiff would buy them again. However, absent this fix, Plaintiff will be unable to rely on the Class Products' *Avocado Oil Representation* in the future as she will be unable to determine the true contents absent scientific testing, and so will be unable to purchase the Class Products in the future, although she would like to. Plaintiff remains interested in purchasing products that contain ***only*** avocado oil, intends on purchasing them in the future, and would consider purchasing Chosen Foods' Class Products in the future if Defendant ensured that its *Avocado Oil Representations* were accurate and truthful.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

**REASONABLE CONSUMER STANDARD**

48. The "reasonable consumer" standard applies to FAL and UCL claims[24], as well as to CLRA claims.[25]

49. A "reasonable consumer" is an ordinary consumer acting reasonably under the circumstances.[26] Such a consumer "need not be exceptionally 'acute and sophisticated,'" nor must the consumer "necessarily be wary or suspicious of advertising claims."[27]

50. To meet the reasonable consumer standard, "a plaintiff need only show that members of the public are likely to be deceived" by the defendant's advertising.[28] Members of the public are likely to be deceived by advertising that is false and by advertising that, "although true, is either actually misleading or…has a capacity, likelihood, or tendency to deceive or confuse the public."[29]

51. As the U.S. Supreme Court has long recognized:

> ***Advertisements as a whole may be completely misleading although every sentence separately considered is literally true.*** This may be because things are omitted that should be said, or because advertisements are composed or purposefully printed in such way as to mislead. . . . ***That exceptionally acute and sophisticated readers might have been able by penetrating analysis to have deciphered the true nature of the contest's terms is not sufficient to bar findings of fraud by a factfinding tribunal. Questions of fraud may be determined in the***

---

[24] *Kasky v. Nike, Inc.*, 27 Cal.4th 939, 950-951 (2002).

[25] *Aron v. U-Haul Co. of California*, 143 Cal.App.4th 796, 806 (2006).

[26] *Skinner v. Ken's Foods, Inc.*, 53 Cal.App.5th 938, 948 (2020), citing *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal.App.4th 663, 682 (2006).

[27] *Id.*, citing *Lavie v. Proctor & Gamble Co.*, 105 Cal.App.4th 496, 509-510 (2003).

[28] *Colgan*, 135 Cal.App.4th at 682.

[29] *Kasky*, 27 Cal.4th at 951.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

> ***light of the effect advertisements would most probably produce on ordinary minds. . . . People have a right to assume that fraudulent advertising traps will not be laid to ensnare them. 'Laws are made to protect the trusting as well as the suspicious.'***[30]

52. Reasonable consumers are not expected to look beyond misleading misrepresentations on the front of a package to discover truths in small print on the back.[31] Further, reasonable consumers are not required to be "versed in the art of inspecting and judging a product."[32] Consumers also are not required to undertake an investigation and make a one-to-one comparison of various competing products.[33]

53. As courts hold, it is "***an untenable position***" ***that "the hypothetical 'reasonable consumer'*** would, as a matter of law, examine the makeup of a [product]; that such a consumer would not rely upon the expertise of pharmacologists and doctors but ***would instead analyze the various concentrations of [ingredients] in each [product] and draw a personal conclusion*** about which ingredients he/she needed."[34]

54. Representations "may not be misleading in isolation, but are deceptive when considering the package and advertisement as a whole."[35] Thus, a "perfectly true statement couched in such a manner that it is likely to mislead or deceive the

---

[30] *Donaldson v. Read Magazine*, 333 U.S. 178, 188-189 (1948) (emphasis added, internal citations omitted).
[31] *Williams v. Gerber Prods. Co*., 552 F.3d 934, 939 (9th Cir. 2008).
[32] *Skinner*, 53 Cal.App.5th at 949, citing *Colgan*, 135 Cal.App.4th at 682.
[33] *Homeland Housewares, LLC v. Euro-Pro Operating LLC*, 2014 U.S. Dist. LEXIS 117587, at *8-9 (C.D. Cal. 2014).
[34] *Brady v. Bayer Corp.*, 26 Cal.App.5th 1156, 1160 (2018) (emphasis added).
[35] *Mullins v. Premier Nutrition Corp*., 178 F.Supp.3d 867, 889 (N.D. Cal. 2016). *See also Bruton v. Gerber Prods. Co.*, 2017 U.S. App. LEXIS 12833, at *3 (9th Cir. 2017) (noting that "even technically correct labels can be misleading"); *Lima v. Gateway, Inc.*, 710 F.Supp.2d 1000, 1007 (C.D. Cal. 2010) (holding that statements "cannot be considered in isolation because they contribute to the deceptive context of the advertising as a whole").

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

consumer, such as by failure to disclose other relevant information, is actionable."[36]

## EQUITABLE RELIEF

55. As a result of Defendant's unlawful business practices, and the harm caused to Plaintiff and Class members, Defendant should be required to pay for all damages and/or restitution. Monetary compensation alone, however, is insufficient to remedy the ongoing harm caused to Plaintiff and Class members who are unaware of Defendant's deceptive conduct and will continue purchasing the Class Products, reasonably but incorrectly believing that they are purchasing products made only with avocado oil. Accordingly, injunctive relief requiring Defendant to cease its false and deceptive labeling practices with respect to the Class Products is necessary and appropriate.

56. At this early juncture, Plaintiff does not know whether the Court will accept a model for legal damages that Plaintiff will proffer in the future at the appropriate time, nor does Plaintiff know whether the Court will find that any such model adequately compensates Plaintiff's and the Classes' losses. Therefore, Plaintiff sets forth alternate theories of legal damages and equitable restitution.

57. As described in this Complaint, Defendant's material misrepresentations on the packaging of its Class Products are ongoing and represent an ongoing deception to Plaintiff and consumers who are subjected to Defendant's misleading and false representations. Thus, on behalf of herself, the Classes, and the general public, Plaintiff seeks an injunction prohibiting Defendant from the marketing and packaging of the Class Products with the misleading and false *Avocado Oil Representations* described in this Complaint.

## CLASS ACTION ALLEGATIONS

58. As detailed above, Defendant is engaged in false and deceptive

---

[36] *Day v. AT&T Corp.*, 63 Cal.App.4th 325, 332-333 (1998); *Aron*, 143 Cal.App.4th at 807.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

marketing, advertising, and product labeling. Defendant's customers are uniformly impacted by and exposed to this deceptive conduct.

59. Plaintiff brings this action individually and as a class action on behalf of others similarly situated, pursuant to Federal Rule of Civil Procedure 23, with classes defined as follows:

**Nationwide Class**

All natural persons who purchased at least one of the Class Products in the United States within the applicable statute of limitations period.

**California Subclass**

All natural persons who purchased at least one of the Class Products in the State of California within the applicable statute of limitations period.

60. Excluded from the Classes are the following individuals and/or entities: Defendant and its parents, subsidiaries, affiliates, officers and directors, current or former employees, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

61. The Classes that Plaintiff seeks to represent contain numerous members and are ascertainable. Plaintiff reserves the right to amend or modify the class definitions and/or to add subclasses or limitations to particular issues.

62. By its unlawful actions, Defendant has violated California Business & Professions Code §§ 17200, *et seq*. and 17500, *et seq*. and California Civil Code § 1770. The questions raised are, therefore, of common or general interest to the Class members, who have a well-defined community of interest in the questions of law and fact raised in this action.

63. Numerosity: The proposed Classes are so numerous that joinder of all members would be impractical. The Class Products are sold throughout the United States and the State of California. The number of individuals who purchased Class

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

Products during the relevant time period is at least in the hundreds, making joinder of individual cases impracticable. While the precise number of Class members and their identities are unknown to Plaintiff at this time, these Class members are identifiable and ascertainable.

64. Typicality: Plaintiff's claims are typical of those of the proposed Classes, as all members of the proposed Classes are similarly affected by Defendant's uniform unlawful conduct as alleged herein. Plaintiff's claims and the Class members' claims are based on the same legal theories and arise from the same unlawful conduct, resulting in the same injury to Plaintiff and all other Class members.

65. Common Questions of Law and Fact Predominate: There are questions of law and fact common to the proposed Classes that predominate over any questions affecting only individual Class members. These common questions of law and fact include, without limitation, the following:

a. Whether Defendant misrepresented material facts and/or failed to disclose material facts in connection with the manufacturing, packaging, marketing, distribution, and sale of the Class Products;

b. Whether Defendant's packaging, marketing, and labeling of Class Products are misleading and/or likely to deceive reasonable consumers;

c. Whether Defendant's use of the challenged packaging, i.e. the *Avocado Oil Representations*, constitutes false or deceptive advertising;

d. Whether Defendant engaged in unfair, unlawful and/or fraudulent business practices;

e. Whether Defendant violated California Business & Professions Code § 17200, *et seq.*;

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

f. Whether Defendant violated California Business & Professions Code § 17500, *et seq*.;

g. Whether Defendant violated California Civil Code § 1770;

h. Whether Defendant's unlawful conduct, as alleged herein, was intentional and knowing;

i. Whether Defendant's marketing, advertising, packaging, and sale of Class Products caused Plaintiff and the Classes to suffer economic harm;

j. Whether Plaintiff and the Classes are entitled to damages and/or restitution, and if so, in what amounts;

k. Whether Plaintiff and the Classes are entitled to injunctive relief; and

l. Whether Plaintiff and the Classes are entitled to an award of reasonable attorneys' fees, interest, and costs of suit.

66. Defendant has engaged in a common course of conduct giving rise to violations of the legal rights sought to be enforced uniformly by Plaintiff on behalf of the proposed Classes. Similar or identical statutory violations, business practices, and injuries are involved. The injuries sustained by proposed Class members flow, in each instance, from a common nucleus of operative fact, namely, Defendant's deceptive packaging and advertising of the Class Products emanating from its headquarters in California. Each instance of harm suffered by Plaintiff and Class members has directly resulted from a single course of unlawful conduct. Each Class member has been exposed to the same deceptive practice: the labeling of Class Products as made exclusively with pure authentic avocado oil, when in fact the products are adulterated or made with lesser-value vegetable or other oils. Individual questions, if any, pale in comparison to the numerous common questions presented in this action.

67. Defendant has acted, or failed to act, on grounds generally applicable to

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

Plaintiff and the proposed Classes, supporting the imposition of uniform relief to ensure compatible standards of conduct toward Class members.

68. Adequacy: Plaintiff will fairly and adequately represent and protect the interests of the other Class members. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and her counsel are committed to prosecuting this action vigorously on behalf of the Class members and have the financial resources to do so. Neither Plaintiff nor her counsel have any interests adverse to those of the other Class members.

69. Superiority: Because the monetary damages suffered by individual Class members are relatively small, the expense and burden of individual litigation make it impossible or unlikely for individual Class members to seek redress for the wrongful conduct described herein. If Class treatment of these claims is not available, Defendant likely will continue its wrongful conduct, unjustly retain improperly obtained revenues, and otherwise escape responsibility for their wrongdoing.

70. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class members is impracticable and questions of law and fact common to the class predominate over any questions affecting only individual members of the Classes. Even if every individual Class member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts if individual litigation of the numerous cases was required. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the conduct of this action as a class action with respect to some or all of the issues will present fewer management difficulties, conserve the resources of the court system and the parties, and protect the rights of each Class member. Further, it will prevent the very real harm that would be suffered by numerous putative Class members who simply will be unable to

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

enforce individual claims of this size on their own, and by Defendant's competitors, who will be placed at a competitive disadvantage as their punishment for obeying the law. Plaintiff anticipates no difficulty in the management of this case as a class action.

71. The prosecution of separate actions by individual class members may also create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to those adjudications or would substantially impair or impede the ability of those non-party Class members to protect their interests. It would also run the risk of establishing inconsistent standards of conduct for Defendant.

**FIRST CAUSE OF ACTION**
**Violations of California's False Advertising Law**
**(Cal. Bus. & Prof. Code § 17500, *et seq*.)**
**(*For Plaintiff and the Classes*)**

72. Plaintiff incorporates each allegation set forth above as if fully set forth herein and further alleges as follows.

73. California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq*., makes it unlawful for any person to engage in advertising "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . ."

74. Defendant has represented, and continues to represent, to the public, including Plaintiff and members of the proposed Classes, through its deceptive packaging and product labeling, that the Class Products are made exclusively with pure authentic avocado oil. Because Defendant has disseminated misleading information regarding the Class Products, and Defendant knows, knew, or should have known, through the exercise of reasonable care, that the *Avocado Oil Representations* are false and misleading, Defendant has violated the FAL. Upon information and belief, Defendant's false statements were developed, reviewed and approved in California.

75. Plaintiff and Class members have suffered injury-in-fact and have lost

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

money as a result of Defendant's false and misleading representations. Indeed, Plaintiff and Class members purchased the Class Products *because of* Defendant's misrepresentations. Plaintiff and members of the proposed Classes would not have purchased the Class Products, or would have paid less for them, had they known that the *Avocado Oil Representations* described above were false and misleading.

76. As a result of Defendant's false advertising, it has and continues to unlawfully obtain money from Plaintiff and Class members. Plaintiff therefore requests that the Court cause Defendant to restore this fraudulently obtained money to her and members of the proposed Classes, to disgorge profits Defendant made on these transactions, and to enjoin Defendant from violating the FAL. Otherwise, Plaintiff and Class members may be irreparably harmed and/or denied an effective and complete remedy.

77. Plaintiff's success in this action will enforce important rights affecting the public interest and, in that regard, Plaintiff sues on behalf of the proposed Classes as well as on behalf of herself and the general public.

78. Injunctive relief is necessary and appropriate to prevent Defendant from repeating or continuing its wrongful business practices alleged above.

79. Plaintiff and Class members have no adequate remedy at law and are therefore entitled to restitution, disgorgement, and/or the imposition of a constructive trust to recover the amounts of Defendant's ill-gotten gains, and/or other sums as may be just and equitable.

80. Plaintiff takes upon herself enforcement of these laws and lawful claims. There is a financial burden incurred in pursuing this action and it would be against the interests of justice to penalize Plaintiff by forcing her to pay attorneys' fees from the recovery in this action. Therefore, an award of attorneys' fees is appropriate under California Code of Civil Procedure § 1021.5.

/ /

/ /

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

**SECOND CAUSE OF ACTION**
**Violations of California's Unfair Competition Law**
**(Cal. Bus. & Prof. Code § 17200, et seq.)**
**(For Plaintiff and the Classes)**

81. Plaintiff incorporates each allegation set forth above as if fully set forth herein and further alleges as follows.

82. California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*, provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising . . ."

83. Under the UCL, a business act or practice is "unlawful" if it violates any established state or federal law. Defendant's false and misleading advertising and labeling of the Class Products was and continues to be "unlawful" because it violates, *inter alia,* the CLRA, FAL, and Cal. Health & Safety Code §§ 110620 ("It is unlawful for any person to manufacture, sell, . . . or offer for sale any food that is adulterated.") and 110585 ("Any food is adulterated . . . (b) if any substance has been substituted wholly or in part therefor . . . [or] (d) if . . . any substance has been added thereto or mixed or packed therewith so as to . . . reduce its quality or strength or make it appear better or of greater value than it is."). As a result of its unlawful business acts and practices, Defendant has unlawfully obtained money from Plaintiff and proposed Class members.

84. Under the UCL, a practice is "unfair" if the conduct offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, as the benefits of committing such acts or practices are outweighed by the gravity of the harm to the alleged victims. Defendant's conduct was and continues to be of no benefit to purchasers of Class Products, as it is misleading, unfair, unlawful and injurious to consumers who rely on the packaging and Defendant's false *Avocado Oil Representations.* Deceiving consumers into believing the Class Products are made ***only*** with avocado oil, when

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

they are not, is of no benefit – and is substantially injurious – to consumers. As a result of its unfair business acts and practices, Defendant has and continues to unfairly obtain money from Plaintiff and proposed Class members.

85. Under the UCL, a business act or practices is "fraudulent" if it actually deceives or is likely to deceive members of the consumer public. Defendant's conduct was and continues to be fraudulent because it has the effect of deceiving consumers into believing the Class Products are made exclusively with avocado oil. As a result of its fraudulent business acts and practices, Defendant has and continues to fraudulently obtain money from Plaintiff and proposed Class members.

86. Upon information and belief, Defendant's false statements were developed, reviewed and approved in California.

87. Plaintiff has standing to pursue this claim as she has suffered an injury in fact and lost money or property as a result of Defendant's acts and practices as described herein. In particular, Plaintiff purchased and paid a price-premium for the Class Products based on Defendant's false and misleading *Avocado Oil Representations*. Had Defendant disclosed to Plaintiff that the Class Products were not made exclusively with avocado oil as advertised, Plaintiff would not have purchased the Class Products or would have paid less for them.

88. As a direct and proximate result of Defendant's unlawful, unfair and fraudulent acts and practices, Defendant has received and continues to hold as ill-gotten gains money and property belonging to Plaintiff and the Classes.

89. Cal. Bus. & Prof. Code § 17203 provides that the Court may restore to any person in interest any money or property that may have been acquired by means of unfair, deceptive, and fraudulent business acts and practices and may order restitution by Defendant to Plaintiff for the practices alleged in this Complaint. Plaintiff and proposed Class members are entitled under Cal. Bus. & Prof. Code §§ 17203 and 17208 to restitution and restoration of all ill-gotten money and property belonging to Plaintiff and the Classes.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

90. Plaintiff's success in this action will enforce important rights affecting the public interest and, in that regard, Plaintiff brings this action on behalf of the proposed Classes as well as on behalf of herself and the general public.

91. Plaintiff requests that the Court enjoin Defendant from violating the UCL as described herein. Injunctive relief is necessary and appropriate to prevent Defendant from repeating or continuing its wrongful business practices that are alleged above.

92. Plaintiff takes upon herself the enforcement of these laws and lawful claims. There is a financial burden incurred in pursuing this action and it would be against the interests of justice to penalize Plaintiff by forcing her to pay attorneys' fees from the recovery in this action. Therefore, an award of attorneys' fees is appropriate under California Code of Civil Procedure § 1021.5.

## THIRD CAUSE OF ACTION

### Violations of Consumer Legal Remedies Act

(Cal. Civ. Code § 1750, *et seq*.)

(For Plaintiff and the Classes)

93. Plaintiff incorporates each allegation set forth above as if fully set forth herein and further alleges as follows.

94. Plaintiff brings this claim individually and on behalf of the proposed Classes against Defendant pursuant to California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq*.

95. At all relevant times, the Class Products were and are "goods" within the meaning of Cal. Civ. Code § 1761(a), and the purchases of the Class Products by Plaintiff and Class members constitute "transactions" within the meaning of Cal. Civ. Code § 1761(e).

96. At all relevant times, Plaintiff and Class members were and are "consumers" within the meaning of Cal. Civ. Code § 1761(d).

97. At all relevant times, Defendant was and is a "person" as defined in Cal.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

Civ. Code § 1761(c).

98. Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have . . ." Defendant violated and continues to violate Cal. Civ. Code § 1770(a)(5) by representing that the Class Products have characteristics and ingredients (i.e., made *only* with avocado oil) that they do not have.

99. Cal. Civ. Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." Defendant violated and continues to violate Cal. Civ. Code § 1770(a)(7) by representing that the Class Products have characteristics and ingredients (i.e., made *only* with avocado oil) that they do not have. Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that Defendant misrepresents the particular standard, quality, or grade of the Class Products.

100. Cal. Civ. Code § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised." By marketing the Class Products as made *only* with avocado oil, but not intending to sell them as such (i.e., selling them with knowledge that they are adulterated or made with other oils), Defendant has violated Cal. Civ. Code § 1770(a)(9).

101. Cal. Civ. Code § 1770(a)(16) prohibits "[r]epresenting that the subject of a transaction has been supplied in accordance with a previous representation when it has not." By marketing the Class Products as made *only* with avocado oil, but not intending to sell them as such (i.e., selling them with knowledge that they are adulterated or made with other oils), Defendant has violated Cal. Civ. Code § 1770(a)(16).

102. Defendant's false and misleading representations were uniform and made with the intent to deceive Plaintiff and the proposed Classes and deprive them of their legal rights and money. Plaintiff and Class members acted reasonably when

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

they purchased the Class Products on the belief that Defendant's representations were true and lawful.

103. At all relevant times, Defendant knew or reasonably should have known that the *Avocado Oil Representations* on the Class Products' packaging are false and deceptive, and that Plaintiff and other Class members would reasonably and justifiably rely on them when purchasing the Class Products. Nonetheless, Defendant persisted in making the *Avocado Oil Representations* on the Class Products' labels to deceive consumers into believing they are buying and consuming products made exclusively with avocado oil. Upon information and belief, Defendant's false statements were developed, reviewed and approved in California

104. Plaintiff and Class members have justifiably relied on Defendant's misleading *Avocado Oil Representations* when purchasing the Class Products. Moreover, based on the materiality of Defendant's misleading and deceptive conduct, reliance may be presumed or inferred for Plaintiff and Class members.

105. Plaintiff and Class members have suffered and continue to suffer injuries caused by Defendant because they would have paid less for the Class Products, or would not have purchased them at all, had they known that the *Avocado Oil Representations* were false.

106. Under Cal. Civ. Code § 1780(a), Plaintiff and the proposed Classes seek injunctive and equitable relief for Defendant's violations of the CLRA.

107. Attached hereto as Exhibit 1 is a declaration of venue pursuant to Cal. Civ. Code § 1780(d).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the proposed Classes, respectfully pray for the following relief:

a. An order certifying this case as a class action on behalf of the Classes defined above, appointing Plaintiff as a representative of the Classes, and appointing Plaintiff's counsel as lead counsel for the Classes;

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

b. A declaration that Defendant's actions, as described herein, violate the claims described herein;

c. An award to Plaintiff and the proposed Classes of restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiff and the proposed Classes as a result of its unlawful, unfair and fraudulent business practices described herein;

d. An award of injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class members, including, *inter alia,* an order prohibiting Defendant from engaging in the unlawful acts described above;

f. Damages as permitted by Cal. Civ. Code §§ 1780 and1782(d);

g. Payment of costs of the suit;

h. Payment of attorneys' fees and costs under Cal. Code of Civ. Proc. § 1021.5 and Cal. Civ. Code § 1780(e);

i. An award of pre- and post-judgment interest to the extent allowed by law; and

j. Such other or further relief as the Court may deem proper.

Respectfully submitted,

Dated: August 25, 2026

**KELLER GROVER LLP**

By: /s/ ***Eric A. Grover***

ERIC A. GROVER
SARAH R. HOLLOWAY
*Attorneys for Plaintiffs*

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

**JURY DEMAND**

Plaintiff, on behalf of herself and the proposed Classes, hereby demands a jury trial with respect to all issues triable of right by jury.

Dated: August 25, 2026

Respectfully submitted,

**KELLER GROVER LLP**

By: **/s/ *Eric A. Grover***

ERIC A. GROVER
SARAH R. HOLLOWAY
*Attorneys for Plaintiffs*

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

**EXHIBIT 1**

**CLRA VENUE DECLARATION OF PLAINTIFF DEBRA BACHMAN**

I, Debra Bachman, hereby declare and state as follows:

1. I have personal knowledge of the facts stated herein and, if called upon to do so, could competently testify thereto.
2. I am the named Plaintiff in this action.
3. I submit this Declaration as required by California Civil Code § 1780(d).
4. This action is being brought in a county where Defendant Chosen Foods LLC does business and sells the Class Products at issue in this action. Defendant has numerous contacts in San Diego County.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct to the best of my knowledge. Executed this 18th day of August, 2026 in Avalon, California.

DEBRA BACHMAN

DEBRA BACHMAN